IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 22, 2007

## BRANDON ROLAND v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rhea County**
**No. 15923     J. Curtis Smith, Judge**

---

**No. E2006-02785-CCA-R3-PC - Filed August 16, 2007**

---

The petitioner, Brandon Roland, who was convicted of first degree murder and theft over $10,000, sought post-conviction relief from the Rhea County Circuit Court, which denied relief after an evidentiary hearing. On appeal, the petitioner presents several issues of the ineffective assistance of counsel. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Keith H. Grant, Dunlap, Tennessee, for the Appellant, Brandon Roland.

Robert E. Cooper, Jr., Attorney General & Reporter; Cameron L. Hyder, Assistant Attorney General; and J. Michael Taylor, District Attorney General, for the Appellee, State of Tennessee.

### OPINION

A Rhea County jury convicted the petitioner, Brandon Roland, of first degree premeditated murder, *see* T.C.A. § 39-13-202(a)(1) (2006), first degree felony murder, *see id*. § 39-13-202(a)(2), and theft of property over $10,000, *see id*. § 39-14-103. The trial court merged the murder convictions, sentenced the petitioner to life imprisonment for the first degree murder conviction and three years for the theft conviction, and ordered the sentences to run concurrently.

The proof at trial showed that the petitioner and Matt Crawford planned to kill the petitioner's father, Thomas Roland, steal his money, credit cards, and vehicle, and drive to Florida. *State v. Brandon Ray Roland*, No. E2002-00927-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Knoxville, Aug. 21, 2003). The two went to the victim's home, where the petitioner was living, and got guns, knives, and ammunition. *Id*. They waited in the petitioner's bedroom until the victim came home. *Id*. When the victim neared the petitioner's room, the petitioner shot the victim. *Id*. The petitioner and Crawford then took the victim's vehicle along with the items they stole from the

house. *Id.*, slip op. at 3. Inside the vehicle, they found the victim's wallet, containing cash and credit cards. *Id.* Before leaving town, they stopped to talk to their school's security guard, who saw the guns and knives and took the two in for questioning at the juvenile detention facility. *Id.* At one point, the petitioner's case was transferred to circuit court, and he was subsequently convicted of his father's murder and of theft of property. *Id.*, slip op. at 7.

On direct appeal, this court affirmed the petitioner's first degree murder conviction.[1] *See id.*, slip op. at 19. The petitioner then filed a timely petition for post-conviction relief, which the post-conviction court denied after an evidentiary hearing.

At the hearing, trial counsel testified that he had been licensed to practice law since 1986, and he had handled over 100 criminal jury trials. He testified that in the petitioner's case, witnesses saw the petitioner leave the crime scene, the police found the petitioner in the victim's vehicle with the victim's possessions, the petitioner confessed to the murder, and after being incarcerated, the petitioner again confessed to the murder. Trial counsel also testified that the petitioner did not give him any other information; the petitioner did not claim that Crawford shot the victim. No tests were conducted identifying gunshot residue on either the petitioner's or Crawford's hands. In addition, Crawford was represented by counsel, and trial counsel only had access to Crawford's statements, which blamed the petitioner for the murder. Thus, the defense theory was self-defense and diminished capacity.

Trial counsel testified that during voir dire, he learned that one of the jurors was the bailiff's son. He indicated in his notes that the juror was a "maybe," meaning that trial counsel got the impression that the juror "wasn't too bad." The jury in this case was sequestered, and after trial, trial counsel learned that the juror and the bailiff shared a hotel room to save the State money. Trial counsel argued the issue in the new trial motion, and the bailiff and the son testified at the new trial hearing that they did not discuss the case. The new-trial-motion court found no violation of the petitioner's rights, and the decision was upheld on direct appeal.

Trial counsel further testified that prior to trial, he collected newspaper articles regarding the case. He decided that the coverage was "average." He also knew that the victim had a bad reputation in the community and thought that this could possibly work to the petitioner's advantage. Therefore, he did not file a change of venue motion.

Trial counsel further testified that the petitioner had signed a waiver, stating that he would give a statement to Agent David Emiren without a parent or his lawyer present. Nothing in the statement indicated that it was coerced. Trial counsel felt that this statement was helpful, although it did contain a confession, because it detailed the on-going abuse the petitioner received from the victim. Trial counsel filed a motion to suppress the letter the petitioner wrote to a friend confessing the murder. This letter was damaging because it was written in a "bragging" tone. After

---

[1]The petitioner did not appeal the theft conviction in his direct appeal. *See Brandon Ray Roland*, slip op. at 1.

an evidentiary hearing, the trial court admitted the letter, and trial counsel raised the issue unsuccessfully in the new trial motion and on direct appeal. After the trial court admitted the letter, trial counsel chose not to argue for suppression of the pretrial statement.

Trial counsel testified that he presented two experts to testify regarding diminished capacity and battered victim syndrome, and he stated that he argued this point from voir dire through closing. He thought that the jury understood the issue, and he thought that he only asked for a diminished capacity jury instruction, although he could not remember.

Trial counsel also testified that he or his investigator met with the petitioner several times before the juvenile transfer hearing and several more times before the petitioner's trial in circuit court. He received a list of the State's witnesses, and he or his investigator interviewed them in addition to other potential witnesses. However, neither he nor his investigator interviewed Robin Fine[2] because trial counsel knew that she was not present during the murder and that she would not offer anything different from the other witnesses already interviewed. In addition, trial counsel met with the petitioner and told him what to wear during the trial and how to act. Trial counsel reviewed possible direct examination questions with the petitioner and discussed the strategy, and trial counsel's investigator warned the petitioner of the hazards of cross-examination.

The petitioner testified that he confessed to the murder because he failed to realize the extent of trouble he was in, he wanted to "cover" for his friend, Crawford, and he did not want people to think of him as a coward who was afraid of the victim. He testified, however, that Crawford was the actual shooter. He further testified that he wrote the confession letter to his girlfriend, sealed the envelope, and addressed it before giving it to officers for them to mail. The petitioner testified that he was not given *Miranda* warnings prior to giving his statement to Agent Emiren and that had he known he could have had a parent present, he would have asked for his mother. The petitioner also testified that trial counsel only met with him four times for an average of 15 to 20 minutes each time. He stated that trial counsel asked him questions and discussed his testimony, but no one prepared him for cross-examination.

Frankie Robertson, the petitioner's mother, testified that she was notified of the shooting on the day it occurred. She attempted to see the petitioner at the juvenile detention facility but was unable to do so and was told that no one could talk to him without her or his lawyer being present. She was also told that he would not be interrogated at that time. Later, the petitioner told her that he was told if he confessed, he could go home. Ms. Robertson also testified that she spoke with trial counsel several times regarding the petitioner's case.

First, the post-conviction court found that, in the post-conviction hearing, the petitioner claimed for the first time that Crawford committed the murder, and the court found this testimony untruthful. The court held that trial counsel was not ineffective for not raising this defense, about which he knew nothing. All proof pointed to the petitioner as the murderer. Second,

---

[2] At the time of the post-conviction hearing, Ms. Fine had died.

-3-

the post-conviction court found that the new-trial-motion court found the juror's and bailiff's testimonies credible that they did not discuss the case. The post-conviction court found that trial counsel raised the issue on appeal and that he was not ineffective. Third, the post-conviction court found that trial counsel's decision not to file a change of venue motion was strategy, and he was not ineffective. Fourth, the post-conviction court found that trial counsel adequately pursued suppression of the confession letter, and trial counsel was not ineffective. Fifth, the post-conviction court found that the petitioner failed to show that the battered-victim-syndrome jury instruction was deficient, and the court ruled that counsel was not ineffective in this regard. Sixth, the court found that trial counsel's decision not to suppress the petitioner's statement to Agent Emiren was a strategic decision. Seventh, the court found that trial counsel met with the petitioner sufficiently and credited trial counsel's testimony that he adequately prepared the petitioner for trial. Finally, the court found that Ms. Fine never witnessed the victim abusing the petitioner, and the petitioner failed to show that her testimony would have changed the outcome of the trial.

On appeal of the denial of his petition, the petitioner raises the following claims of ineffective assistance of trial counsel:

1. Trial counsel's failure "to present all available defenses";

2. Trial counsel's failure "to adequately press the issue of a juror having contact with the bailiff";

3. Trial counsel's failure "to request a change of venue";

4. Trial counsel's failure "to adequately argue the fact that [the petitioner's] correspondence should not have been presented at trial due to it being private mail";

5. Trial counsel's failure "to request a special jury instruction regarding battered victim syndrome";

6. Trial counsel's failure "to file a motion to suppress the [petitioner's] statement";

7. Trial counsel's failure "to properly meet with [the petitioner] and prepare for trial"; and

8. Trial counsel's failure "to call certain witnesses that could testify on [the petitioner's] behalf."

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings

are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001). "Claims of ineffective assistance of counsel are considered mixed questions of law and fact and are subject to de novo review." *Serrano v. State*, 133 S.W.3d 599, 603 (Tenn. 2004); *see State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

The Sixth Amendment of the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). When a petitioner claims ineffective assistance of counsel, the court must determine (1) whether counsel's performance was within the range of competence demanded of attorneys in criminal cases, *Baxter*, 523 S.W.2d at 936, and (2) whether any deficient performance prejudiced the petitioner, *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984); *see also Powers v. State*, 942 S.W.2d 551, 557 (Tenn. Crim. App. 1996). Courts need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. *Henley*, 960 S.W.2d at 580.

A reviewing court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2070. This court should not second-guess informed tactical and strategic decisions by defense counsel. *Henley*, 960 S.W.2d at 579. It must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence. *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2070.

However, this court's deference to counsel's tactical decisions will depend upon counsel's adequate investigation of defense options. *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987). Assuming adequate investigation, the fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. *Jerry Whiteside Dickerson v. State*, No. 03C01-9710-CR-00472, slip op. at 3 (Tenn. Crim. App., Knoxville, Sept. 16, 1998); *Thompson v. State*, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997).

In sum, a petitioner is entitled only to constitutionally adequate representation, not perfect representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). To show prejudice, the petitioner must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

Initially, we note that the majority of the petitioner's claims, couched in regards to ineffective assistance of counsel, mirror his direct appeal complaints, which trial counsel litigated

on appeal. *See generally*, *Brandon Ray Roland*, slip op. at 8-18. This court affirmed the petitioner's conviction. *Id.*, slip op. at 19.

First, the petitioner claims that trial counsel was ineffective for failing "to present all available defenses." Witnesses saw the petitioner leave the crime scene, the police found the petitioner in the victim's vehicle with the victim's possessions, the petitioner confessed to the murder, and after being incarcerated, the petitioner again confessed to the murder. The petitioner never claimed that Crawford killed the victim until the post-conviction hearing. We hold that trial counsel was not ineffective for not raising other defenses; indeed, we discern no potential for any defenses other than that advanced by trial counsel.

Second, the petitioner argues that trial counsel was ineffective for failing "to adequately press the issue of a juror having contact with the bailiff." The new-trial-motion court found the juror's and bailiff's testimonies credible. Trial counsel adequately argued this issue on appeal. Thus, we hold that he was not ineffective.

Third, the petitioner argues that trial counsel was ineffective for failing "to request a change of venue." Trial counsel monitored the publicity and made a strategic decision not to file the motion. This court will not second-guess this informed strategic decision. *Henley*, 960 S.W.2d at 579.

Fourth, the petitioner complains that trial counsel was ineffective for failing "to adequately argue the fact that [the petitioner's] correspondence should not have been presented at trial due to it being private mail." Trial counsel filed a motion to suppress and argued the issue. He again adequately argued the issue on appeal. We hold that his performance was not below constitutional standards.

Fifth, the petitioner contends that trial counsel was ineffective for failing "to request a special jury instruction regarding battered victim syndrome." Trial counsel testified that he argued battered victim syndrome in conjunction with diminished capacity, for which he requested a special instruction. In addition, two experts testified to this at trial. Moreover, the record is devoid of the jury charge, and the petitioner failed to show what instructions were requested, denied, or granted. *See* Tenn. R. App. P. 24(b) (instructing that the appellant bears the burden of preparing an adequate record for appellate review). Thus, due to deficiencies in the record, we hold that petitioner failed to carry his burden of showing ineffective assistance of counsel.

Sixth, the petitioner complains that trial counsel was ineffective for failing "to file a motion to suppress the [petitioner's] statement." Trial counsel testified that the petitioner signed a waiver stating that he would give the statement without a parent or lawyer present. Furthermore, after the trial court admitted the confession letter, which trial counsel deemed more damaging, trial counsel elected not to file the motion because, although the statement contained a confession, it helpfully detailed the on-going abuse the petitioner received from the victim. Again, this court will not second-guess this informed strategic decision. *Henley*, 960 S.W.2d at 579.

-6-

Seventh, the petitioner argues that trial counsel was ineffective for failing "to properly meet with [the petitioner] and prepare for trial." The post-conviction court made a credibility finding in favor of trial counsel's testimony that he sufficiently met with and adequately prepared for trial. Trial counsel and his investigator on several occasions met with the petitioner, reviewed strategy and potential questions, gathered information, and advised the petitioner about cross-examination strategy. In addition, they interviewed potential witnesses and spoke with the petitioner's mother several times. We hold that trial counsel's performance was within the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936.

Eighth, the petitioner claims that trial counsel was ineffective for failing "to call [Robin Fine, who] could testify on [the petitioner's] behalf." The post-conviction court found that the petitioner failed to show that Ms. Fine's testimony would have changed the outcome of the trial. Furthermore, "[w]hen a [post-conviction] petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). If he fails to do so, he generally fails to establish ineffective assistance of counsel. *Id*. The post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Id*.; *see also Wade v. State*, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995). At the time of the post-conviction hearing, Ms. Fine had died. Moreover, trial counsel testified that Ms. Fine had never witnessed any abuse, and he thought that her testimony would not add anything new. The petitioner failed to carry his burden to show that trial counsel was ineffective.

Having reviewed all of the petitioner's claims for post-conviction relief and finding that the record supports the post-conviction court's denial of his claims, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE